IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY J. WEBER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 02:13-cv-00546-TFM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

April 11, 2014

I. **Introduction**

Anthony J. Weber ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and

1383(c) for judicial review of the final determination of the Commissioner of Social Security

("Commissioner"), which denied his application for disability insurance benefits (DIB) and

supplemental security income (SSI) under Titles II and XVI of the Social Security Act ("Act"),

42 U.S.C. §§ 1381-1383(f).

II. **Background**

A. **Facts**

Treatment Record

Plaintiff was born on July 24, 1964. (R. 23).  He has limited education, but is able to

communicate in English. (R. 23).  He has past relevant work experience as a construction laborer

(classified as skilled, light-exertional work) and a roofing construction laborer (classified as

skilled, heavy-exertional work). (R. 22).

Plaintiff alleges disability as of January 31, 2008, due to migraine headaches, degenerative disc disease of the cervical and lumbar spines, status post-closed head injury, cognitive disorder, depressive disorder, impulse control disorder, and anti-social personality disorder. (R. 17). The record reflects that Plaintiff has not engaged in substantial gainful work activity since his alleged onset date. (R. 17).

While fighting with another man on train tracks, Plaintiff was pushed in front of an oncoming train in April 2007. (R. 290). As a result of being hit by the train, Plaintiff fractured his left upper arm, collarbone and facial bones. (R. 247). Following two days of treatment and testing, Plaintiff was discharged and told to schedule follow-up orthopedic appointments. (R. 247). However, no evidence exists indicating that Plaintiff complied with any follow-up visits. Plaintiff visited the emergency room one year following his injuries reporting migraine headaches. (R. 275). However, scans revealed nothing abnormal and he was told that Vicodin can cause dizziness and that alcohol consumption contributes to migraines. (R. 279-80). Furthermore, his physical examination was unremarkable and a CT-scan of his brain was normal. (R. 277-78).

In July 2009, Plaintiff visited Nabil Jabbour, M.D. for a physical examination. (R. 384). His physical examination was essentially normal with some lumbar spine tenderness and mild degenerative disc disease. (R. 389). Plaintiff also presented to Louis R. Olegario, M.D. a pain management physician. (R. 378). Plaintiff reported suffering from headaches and having difficulties with walking, climbing stairs, and working. (R. 379-80). He was taking aspirin for pain and displayed full motor strength and a normal gait. (R. 379-380).

Plaintiff underwent a psychological evaluation performed by Danny Detore, Ed.D. on December 10, 2009. (R. 335). Plaintiff told Dr. Detore that he participated in normal daily

activities and his concentration and memory were adequate. (R. 337). He was not taking medications, had not gone through drug or alcohol treatment, and served three years in prison for alcohol abuse and DUIs. (R. 336-37).

Plaintiff presented to the emergency room after an assault in September 2010. (R. 474). He was diagnosed with comminuted left mandibular coronary process, and comminuted bilateral nasal bone fractures with fragmentation of the nasal septum. (R. 20). Although he reported being kicked in the face and displayed lacerations around his left eye, he was treated and found to be functioning within normal limits upon discharge. (R. 429, 431, 435, 479, 500, 635-36, 668). He also admitted to drinking between four and twelve beers on the day of admission, and was quite aggressive and belligerent during treatment. (R. 20). Furthermore, a follow-up appointment with Dr. Jabbour led to a finding that Plaintiff was not taking his prescribed medications. (R. 382).

In December 2010, Ray M. Milke, Ph.D. a psychological expert conferring with the state agency, determined that Plaintiff was able to meet basic demands of competitive work after reviewing Plaintiff's record.

In March 2011, Selim El-Attrache, M.D., an orthopedist, wrote a letter indicating that Plaintiff was not employable since 2008 as a result of orthopedic trauma, mental health, and an inability to read and write. (R. 365). Dr. El-Attrache found that Weber was permanently disabled from his traumas and prescribed Vicodin and Motrin. (R. 695-96). Although Dr. El-Attrache reported that Plaintiff had a left upper limb weakness and positive straight leg raise, motion of the spine and joints of the upper and lower limbs was adequate. (R. 695-96). X-rays of Plaintiff's lumbar and cervical spine demonstrated some degenerative changes, but no acute fractures or dislocations. (R. 695-96). Dr. El-Attrache advised that Weber was to contact a pain

management center for further medication and would not prescribe additional medication himself. (R. 695-96).

Plaintiff presented to the ER in March 2011 with another arm injury from a reported fall and had a strong alcohol odor, but neurological functioning was intact. (R. 436-437). He experienced only "mild" chronic anxiety and exhibited no abnormal movements, was casually dressed, had no delusions, loosening of associations, racing thoughts, or thought blocking, and had no suicidal or homicidal ideation. (R. 21). On July 15, 2011, Plaintiff was taken to the ER in critical condition after an altercation with the police. (R. 972, 1003). He had a closed head injury and bone fractures as a result of a fall down a staircase due to police tazing. (R. 972). His blood alcohol level was .307 and he presented a positive urine test for cocaine. (R. 705).

Dr. Jabbour noted, after this incident, that Plaintiff was in general good health and taking no medications. (R. 1066-1067). He had no weakness or limitation in any extremity, only mild tenderness in his lumbar area with no limitation in movement, and his range of motion and gait were normal. (R. 1068-69). He had complained of headaches for four years which got worse after his trauma in July 2011, neck pain, shortness of breath, nocturnal hypoxia and back pain. (R. 1067). Dr. Jabbour diagnosed these conditions and also noted a history of depression and mood disorder. (R. 1067).

Plaintiff has admitted to a long history of alcohol dependence, frequently followed by assaults and arrests. (R. 247, 268, 287, 291, 294, 296, 300, 308, 441, 442, 474, 691, 705, 709, 1003). The attending psychiatrist repeatedly referred Plaintiff to AA, various shelters, and SPHS, but he refused to follow-up. (R. 273, 295, 311). Following his police altercation in July 2011, he underwent intensive rehabilitation at Harmarville. (R. 708). Upon discharge he displayed normal manner, mood, impulse control, and judgment. (R. 777). He exhibited

attention within normal limits and presented only a slight memory impairment, and his emotional functioning was appropriate. (R. 777, 780). Dr. Jabbour concluded that Plaintiff was able to interact with the examiner without difficulty. (R. 1065).

Hearing Testimony

Plaintiff's attorney stated that Plaintiff has had back problems, headaches, dizziness, and rarely leaves the house since his train accident in 2007. (R. 42). Plaintiff testified that he began seeing Dr. El-Attrache for his back problem a couple of months before the hearing and started treatment with Donald Breneman, M.D. for prescription medications for depression, Xanax and another medication he couldn't recall. (R. 48). In response to an inquiry by the ALJ concerning his drug and alcohol useage, Plaintiff stated that he has not had any excessive alcohol use or street drugs in the last four or five years and mentioned that he doesn't use drugs other than those prescribed. (R. 61-62).

The ALJ questioned the VE, who stated that Plaintiff's past work as a construction foreman and as a roofing construction laborer were skilled jobs, SVP levels of 8 and 7, respectively. (R. 64). The ALJ asked the VE if Plaintiff could return to those jobs with an RFC finding of working at the light level of exertion; limited to never climbing ladders, ropes or scaffolds and never exposing him to workplace hazards. Work that involved understanding, remembering, and carrying out only simple instructions and making few workplace decisions, involving no interaction with the general public, and only occasional interaction with co-workers and supervisors. (R. 65). The VE responded that Plaintiff could not. (R. 65).

In response to a question posed by the ALJ regarding jobs an individual of Plaintiff's age, education, and past work experience with the above-described RFC could perform, the VE testified that such a person could perform unskilled, light and sedentary jobs of folder, garment

sorter, cuff folder, and nut sorter, of which there are 3 million in the national economy. (R. 65-66).

**B.      Procedural History**

Plaintiff initially filed an application for SSI and DIB on April 2, 2009, in which he claimed total disability since January 31, 2008.  An administrative hearing was held on May 13, 2011 before Administrative Law Judge Barbara Artuso.  Plaintiff was represented by counsel and testified at the hearing.  Mitchell A. Schmidt, an impartial vocational expert, also testified at the hearing.

On December 9, 2011, the ALJ rendered an unfavorable decision to Plaintiff in which she found that Plaintiff retained the ability to perform light work if he ceased his substance abuse and, therefore, was not "disabled" within the meaning of the Act.

The ALJ's decision became the final decision of the Commissioner on February 20, 2013, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On April 13, 2013, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ.  The parties have filed cross-motions for summary judgment. Plaintiff contends that the ALJ erred in finding that Plaintiff retained the Residual Functional Capacity to Perform a Range of Light Work.  The Commissioner contends that the decision of the ALJ should be affirmed because there is substantial evidence that Plaintiff's substance use was a contributing factor material to the determination of disability and, when Plaintiff stopped the use, his remaining limitations were not disabling.  The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.    Legal Analysis**

A.   <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971).  It consists of more than a scintilla of evidence, but less than a preponderance.  *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119, n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. Compare 20 C.F.R. §416.920 with § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990) (holding that regulations implementing the Title II [DBI] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d. Cir. 2000) (stating claimants burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is disabled, the Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920 (1995).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working,

(2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir. 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari,* 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1)  by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2)  in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503.  Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and

work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

Congress amended the Social Security Act by the Contract with America Advancement Act of 1996, which precludes the award of disability benefits in cases in which alcoholism or drug addiction play a contributing role in the claimant's inability to perform substantial gainful employment. Pub. L. No. 104-121, § 105, 110 Stat. 847 (1996), *amending* 42 U.S.C. §§423(d)(2)(C), 1382c(a)(3)(1); *see Gallagher v. Astrue*, 02:11-CV-1118, 2012 WL 2344455 (W.D. Pa. June 20, 2012). Congress was "troubled by reported instances in which substance abusers that are neither participating in nor seeking treatment use Federal disability payments to buy drugs and alcohol…[and] regard this misuse of funds as a disservice both to the taxpaying public and to individuals caught in the trap of addiction." *See* H.R. Rep. No. 103-505, 103d Cong. 2d Sess., *reprinted in* 1994 U.S.C.C.A.N. 1494, 1496-97.

In a case involving drug and alcohol use, an ALJ who finds a claimant disabled must determine whether the claimant's alcoholism or drug addiction is a contributing factor material to that determination. 42 U.S.C. § 423(d)(2); 20 C.F.R. §416.935. If so, the claimant is not entitled to receive benefits. *Friend v. Astrue*. 788 F. Sup. 2d 365, 367 (E.D. Pa. 2011). The ALJ must first perform the normal five-step analysis to determine if a claimant is disabled. *Ellow v. Astrue*. 11-7158, 2013 WL 159919, *2 (E.D. Pa. Jan. 15, 2013). If the ALJ so concludes, she moves to a second analysis to determine the effect of drug and alcohol abuse and determine which, if any, of the claimant's physical and mental limitations would remain if the claimant ceased using drugs or alcohol. *Id*. Finally, the ALJ must determine if any of those remaining limitations would be disabling. *Id.*

**B. Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3ʳᵈ Cir. 1986), *cert. denied*., 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

In his motion for summary judgment, Plaintiff claims that the ALJ did not properly consider the reports of Dr. Jabbour or Dr. El-Attrache. Pl's Br. in Supp. Of Mot. for Summ. J. at 3-7 (ECF No. 13). Plaintiff is apparently arguing that the severe impairments noted by Dr. Jabbour and Dr. El-Attrache would remain even if Plaintiff were not abusing drugs or alcohol – although Plaintiff has not directly challenged the ALJ's analysis regarding the effects of his substance abuse. The Commissioner argues that the ALJ properly weighed all of the medical evidence of record and found that substance abuse was a contributing factor material to the determination of disability. The Commissioner further argues that, absent substance use, Plaintiff was not disabled. Def's Br. in Supp. Of Mot. for Summ. J. at 11-17 (ECF No. 15). The Court will address Plaintiff's contention.

1. *The ALJ Properly Evaluated the Medical Evidence and determined that, absent Plaintiff's substance abuse, Plaintiff was not disabled*

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence in determining his residual functional capacity. In her decision, the ALJ considered the Plaintiff's medical records as well as the opinions of his doctors. The ALJ found that the evidence of record supports the argument that Plaintiff is disabled. However, the ALJ also found that, absent

Plaintiff's substance abuse, Plaintiff would not be disabled and would be capable of performing light work. The Court finds that the ALJ's treatment of the doctors' opinions and in determining the effect of Plaintiff's drug and alcohol abuse on his residual functional capacity was proper.

It is well settled that an ALJ must accord a treating source's opinions "great weight, especially when [they] reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer v. Apfel*, 186 F.3d at 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987). However, the ultimate decision of whether a person is eligible for DIB is a question of law, and if the Commissioner's decision if supported by substantial evidence, then such a decision must be sustained. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). That is not to say that the doctors' opinions were not entitled to any consideration by the ALJ. *See* SSR 06-03P, 2006 WL 2329939. The Social Security Administration ("SSA") has explained that evidence from "medical sources…should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. In evaluating evidence from medical sources, the ALJ must consider the following factors:

- how long the source has known and how frequently the source has seen the individual;

- how consistent the opinion is with other evidence;

- how well the source explains the opinion;

- whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- any other factors that tend to support or refute the opinion.

*Id.* at *4-5 (citing 20 C.F.R. § 404.1527(d)).

In this case, the ALJ properly applied those factors in deciding that some of Plaintiff's treating doctors' opinions were against the weight of the underlying medical evidence. The Court notes that although the ALJ did not refer to Dr. Jabbour and Dr. El-Attrache by name, she did specifically recite the documents which contained their medical reports. As the ALJ concluded, there was no objective basis for justifying the opinions of Plaintiff's medical doctors that Plaintiff lacks an inability to perform all work activity, especially during any 12-month period. (R. 32). Plaintiff's degenerative disc disease and history of headaches have not resulted in significant clinical or diagnostic findings. (R. 27). The ALJ mentioned that she afforded "little weight" to the medical doctors' Welfare Employability forms and disability opinions. (R. 29). The opinions were inconsistent with the totality of the evidence, such as Plaintiff's resisting police arrest and fighting, incidents inconsistent with someone who lacks the physical capacity to perform any work activity. (R. 29-30). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (providing that an ALJ may assign no or little weight to a medical opinion, even one from a treating source if he/she sufficiently explains his/her rationale and if the record supports his/her findings).

Furthermore, the ALJ pointed out that the consultative examining physician reported findings that were generally within normal limits. (R. 30). Both Dr. Jabbour and Dr. Milke opined that Plaintiff's physical impairments were not barriers to performing work activities at the light level of exertion. (R. 30). *See Jones v. Sullivan*. 954 F.2d 125, 128 (3d Cir. 1991) (upholding an ALJ's rejection of treating physician opinion in part based on the opinions of non-examining state agency physicians).

In 2011, Plaintiff underwent rehabilitation at Harmarville following a police altercation. (R. 708). Plaintiff denied symptoms of depression and anxiety and displayed normal manner, impulse control, mood, and judgment. (R. 709-777). He exhibited attention within normal limits,

presented only a slight memory impairment, and his emotional functioning was appropriate. (R. 777, 780). Dr. Jabbour opined that Plaintiff was able to interact without difficulty and this finding was consistent with Plaintiff's behavior following discharge from Harmarville. (R. 1065).

It is important to recognize that the ALJ considered all of the above medical evidence and determined that Plaintiff was disabled. However, the ALJ then properly considered Plaintiff's substance use and its effect upon Plaintiff's limitations. If a substance abuse disorder is a contributing factor material to the determination of disability, the ALJ may conclude that Plaintiff is not "disabled" under the SSA for either DIB or SSI. *Westcott v. Astrue,* 2010 WL, 5419032 (W.D. Pa 2010). In this case, the ALJ found that plaintiff was disabled at step five and then continued in her analysis to determine the materiality of drug or alcohol abuse. (R. 23-31). She concluded that Plaintiff would not be disabled but for his substance abuse and had the ability to perform unskilled work at the light level of exertion. (R. 24-31). The ALJ determined that many of Plaintiff's physical injuries were directly related to his alcohol and/or drug use. (R. 27-29). When he stopped his substance use, the evidence on record indicated that his remaining limitations were not disabling. (R. 29). Plaintiff has not directly challenged this aspect of the ALJ's reasoning.

With respect to the RFC formulation, the ALJ found that Plaintiff was capable of performing unskilled work at the light level of exertion, while recognizing that limitations do exist aside from Plaintiff's substance abuse. (R. 30). The limitations were incorporated into the hypothetical presented to the VE. (R. 30). The hypothetical was based upon evidence of record indicating that Plaintiff had no emotional, spiritual, or cognitive needs when he was sober. (R. 270). In an effort to help Plaintiff maintain his sobriety and higher level of functioning, his attending psychiatrist referred him to AA, various shelters, and SPHS on multiple occasions. (R.

273, 295, 311). However, Plaintiff refused to follow his psychiatrist's recommendations despite being advised that his alcohol consumption could be the cause of his migraines. (R. 272, 279-80, 303-04). *See* 20 C.F.R. §§ 404.1530, 416.930 (stating that in order to receive benefits, a claimant must follow prescribed treatment; if treatment is not followed without good reasons, a claimant will not be found disabled).

The Court acknowledges that Plaintiff's medical conditions would prevent him from working at several jobs in the national economy, but to conclude that Plaintiff is incapable of succeeding at "any" job absent his substance abuse is simply too broad and incorrect. Substantial evidence exists to support the ALJ's determination that he can indeed function adequately at jobs within his RFC if he were to relinquish his substance abuse.

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that Mr. Weber is able to perform a limited range of work at the light exertional level.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY J. WEBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:13-cv-00546-TFM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 11th day of April, 2014, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment (ECF No. 12) filed by Plaintiff, Anthony

    J. Weber, is **DENIED**;

2. The Motion for Summary Judgment (ECF No. 14) filed by Carolyn W. Colvin,

    Acting Commissioner of Social Security, is **GRANTED**; and

3. The Clerk will docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     **Jon M. Lewis, Esquire**
        Email: jon@jonlewislaw.com
        **Christy Wiegand, Esquire**
        Email: christy.wiegand@usdoj.gov